**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**JOSEPH WALTERS, By And Through
His Attorney-in-Fact, SHEILA WALTERS**                                              **PLAINTIFF**

**VERSUS**                                                            **CIVIL ACTION NO. 2:05cv54KS-MTP**

**TRAIL KING INDUSTRIES, INC.**                                                   **DEFENDANT**


**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motion for Summary Judgment **[#94]** filed on behalf of the defendant.[1]  The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being fully advised in the premises finds that the motion is well taken and should be granted.  The court specifically finds as follows:


**FACTUAL BACKGROUND**

On August 9, 1999, Joseph Walters purchased a new TK20 Flatbed Trailer ("TK20 trailer"), serial number 1TKC02420YB079280, from Beard Equipment.  The TK20 trailer was manufactured by Trail King and was equipped with self-supporting wood-filled ramps for loading and unloading.  According to the defendant, the wood

---

[1] The plaintiff also has a Motion for Partial Summary Judgment pending and both parties have motions to strike the other's respective experts as well as various other motions.  Finding that the present motion is dispositive of all issues negates the necessity of going to the merits of the other motions.

inserts in the self-supporting ramps are designed to provide traction while loading and unloading equipment, especially equipment with steel tracks. The self-supporting ramps are purportedly designed so that when the ramps are lowered to the loading position, a flange fits under the base of the trailer, thereby virtually joining the ramps and trailer bed together. The flange serves two functions: (1) to provide support to the rear of the trailer during loading and (2) to prevent relative motion between the ramp and the trailer during loading. The hinge assembly and ramp pin, which is the subject of this case, are designed to allow the ramps to articulate for storage onto the back of the trailer when the ramps are not in use. The defendant contends that the pin and hinge mechanism are not designed to be load bearing. Trail King specifies that the ramp pin used in the hinge assembly be 1½ inch in diameter, 2.570 feet in length and made of 1045 cold rolled round steel.

Trail King delivered the TK20 trailer to Beard Equipment on July 22, 1999. At the time of the purchase, Joseph Walters acknowledged receipt of the TK20 trailer's owner's manual/operating instructions and acknowledged that the trailer had not been modified or altered. The plaintiff also completed and signed the warranty registration form for the TK20 and submitted it to Trail King.

This case arises from a dozer roll-over incident that occurred on or about May 13, 2003 at approximately 2:10 p.m. in Forrest County, Mississippi. On that date, the plaintiff had been clearing a lot of land with his John Deere 450G dozer. It had been raining off and on while the plaintiff was working. After he finished the job, he was attempting to load the dozer on the TK20 trailer when, according to the plaintiff's allegations, the ramp pin on the left ramp broke, causing the dozer to become

unbalanced and roll off the trailer.

Joseph Walters had used the TK20 trailer for approximately four years, on "nearly a daily basis, Monday through Saturday of each work week," before the incident which led to the plaintiff's complaint. It is estimated that the plaintiff used the trailer some one thousand times or more before the accident.

As a result of the calamity, the plaintiff has filed the present suit asserting that the trailer was defectively designed and unreasonably dangerous, and that it was reasonably foreseeable that the ramp pin would break causing any vehicle on the loading ramps to become unbalanced and fall off the trailer. The plaintiff also asserts that the defendant failed to provide adequate warnings that the ramp pins could break causing a vehicle to become unbalanced and roll off the ramps.

During the four years preceding the May 13, 2003 incident Joseph Walters and others made multiple modifications, adjustments, replacements and repairs to the TK20 trailer generally, and to the loading ramps and hinge assembly specifically. It is uncontradicted that neither Walters nor anyone performing repairs to the trailer on his behalf ever consulted Trail King representatives, engineers or its warranty department for guidance concerning parts or material specifications in doing the repairs.

One example of a modification set forth by the defendant was the wood inserts placed in the ramps by Trail King which were missing on May 13, 2003. These wood inserts were designed to assist in traction when loading steel tracked vehicles such as Walters' dozer. According to Howard Walters, Joseph Walters directed him to weld metal bars across the top and bottom of each loading ramp "to keep the wood in the ramps. According to the plaintiff, the welded bars at the top and bottom of each ramp

3

were placed there because the "dozer tracks wore the pin – the bolts out holding them [wood inserts] on there and it come off." At the time of the accident, the wood inserts were not present and only the metal straps were present across the ramps.

Another repair or modification about which Howard Walters testified occurred in 2001, approximately two years after the plaintiff purchased the TK20 trailer. The left ramp pin broke and he [Howard Walters] welded a "pad out on the [left] ramp of the trailer...where the [left] ramp connects to the trailer" because the "pin broke and bent the pad out when the ramp bent or pulled around, the dozer kicked it out of its place." According to Howard Walters, he made this particular repair and modification including replacing the left ramp pin and re-connecting the left ramp to the trailer by welding an additional piece of steel beside the original pad eye, which had been straightened, onto the left side of the trailer.

Billy Ray Stephens, the plaintiff's son-in-law, testified that he also performed maintenance and repairs on the TK20 trailer before the May 13, 2003 incident. According to Stephens, at one time he re-welded a left ramp bracket that broke off the dovetail section on the trailer connecting the ramps to the trailer. Stephens testified that he cut two pieces of flat metal and using the unbroken ramp bracket as a guide, made two brackets. He then used the ramp pin that was in the hinge assembly at the time as a guide to weld the hand-made brackets onto the trailer. According to Stephens, these repairs and modifications were performed in an open field on a job-site and without the consultation of an engineer or speaking to a Trail King representative.

The plaintiff also testified that he had changed the ramp pins on the trailer some "[f]ive or six times, a bunch of times. I didn't write down on the wall how many times. I

know we replaced them several times." It is undisputed that the replacement pins were obtained by Walters and that they were not Trail King replacement parts.

In discovery, various replacement pins were furnished by the plaintiff's counsel who has admitted that he does not know precisely where the replacement pins came from, when they were on the TK20 trailer, or how they were removed from the trailer. The three ramp pins, as produced to the defendant, were marked "previous pin" and "accident pin". For purposes of this motion, and from the inception of this case, the plaintiff's counsel has represented that the two pin sections labeled "accident pin", as shown in exhibit 13 to the defendant's motion, are parts of the ramp pin that was in the left ramp on May 13, 2003.

A section of the ramp pin produced during discovery labeled "accident pin" was sent to a certified laboratory for chemical testing by the defendant. The certified results of the chemical test for the "accident pin" indicate that it was composed of 1018 steel, with a carbon content of .19%. Trail King also sent a genuine replacement pin (Part No. 1110036) for chemical and mechanical analysis. The certified results show that a Trail King's genuine replacement ramp pin is composed of 1045 steel, with a carbon content of .45% and a tensile strength of 114.10 ksi (Ultimate) with a calculated stress/load application of 22,820 lbs, and 88.50 (Yield) with a calculated stress/load application of 17,700 lbs, which is substantially higher than the values for the "accident pin."

On August 24, 2006, the day before this motion was due and the day after the plaintiff's counsel received the chemical analysis performed on the pins by defendant's expert, counsel for Trail King received a call from the plaintiff's counsel advising for the

5

first time that the plaintiff had been mistaken about which pin was the accident pin and producing another pin segment purporting to be taken from the broken "accident pin."

The plaintiff has filed the present complaint asserting that the TK20 trailer was defectively designed and unreasonably dangerous in that it was reasonably foreseeable that the ramp pin would break causing any vehicle on the loading ramps to become unbalanced and fall off the trailer. The plaintiff also asserts that the defendant failed to provide adequate warnings that the ramp pins could break causing a vehicle to become unbalanced and roll off the ramps.

The defendant has filed its motion for summary judgement asserting that the plaintiff cannot prove that any action or inaction on the part of Trail King was the proximate or legal cause of any injury suffered by the plaintiff; that the plaintiff cannot meet his burden under the Mississippi Product Liability Act ("MPLA") under an alternative design theory or a failure to warn theory because the plaintiff, and/or his authorized agents, made material changes, alterations, repairs, replacements and modifications to the trailer, and specifically to the ramp pin at issue here; that the plaintiff's design defect claim must fail because (1) there is no evidence that the manufacturer knew or should have known about the danger that caused the injury; (2) the Trail King TK20 functioned as expected; and, (3) the plaintiff has not presented a feasible alternative design that would have to a reasonable probability prevented the harm suffered by the plaintiff; and that the plaintiff's failure to warn claim must fail because the warnings provided by the manufacturer were clear, undisputed and ignored.

## **STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  Id.  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d

265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v.*

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

      While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## MISSISSIPPI PRODUCTS LIABILITY ACTIONS

      Mississippi's codification of its prior common law of strict products liability is found at Miss. Code Ann. § 11-1-63 (2006), the Mississippi Products Liability Act ("MPLA").  That section provides, in pertinent part;

    (a)  The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

      (i)  1.  The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured

to the same manufacturing specifications, or

    2.  The product was defective because it failed to contain adequate warnings or instructions, or

    3.  The product was designed in a defective manner, or

    4.   The product breached an expressed warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

  (ii)  The defective condition rendered the product unreasonably dangerous to the user or consumer; and

  (iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Thus, in order to meets his burden of production at this point in the litigation, the plaintiff must offer proof that at the time the trailer left the manufacturer, it was "defective," that the defect rendered the trailer "unreasonably dangerous," and that the defective condition of the trailer proximately caused the plaintiff's alleged injuries.  To meet this burden, the plaintiff is proceeding under Sections (a)(i) 2 and 3 -- inadequate warnings or instructions and design defect, respectively.  He has not set forth a claim for breach of warranty or manufacturing defect.

### INADEQUATE WARNINGS

For a claim of inadequate warnings, the MPLA further provides:

(c)(i)   In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.

    (ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product; or in the case of a prescription drug, medical device or other product that is intended to be used only under the supervision of a physician or other licensed professional person, taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug, device or other product.

and,

    (e) In any action alleging that a product is defective pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.

Miss. Code Ann. § 11-1-63(c)(i), (ii), (e).

    The TK20 trailer's owner's manual contains the following warnings and instructions relevant to the plaintiff's claims:

**General Safety**    **Read the manual. Your *safety* is at stake!**

  ! *Read the manual* Before anyone operates this trailer, they must read and understand the material in the introductory and operating sections of this manual. Never allow anyone who has not understood the safety warnings, the pre-trip checks, and the actual loading and operating instructions to operate this trailer. *Human safety* is at stake....

  ! *Equipment & Controls*
    ! Never modify the trailer. Altering this equipment in any manner which adversely affects its operation, performance, durability, or use will void the warranty and may cause hazardous condition.

    * * *

    ! Failure to use replacement parts that meet factory specifications, or failure to follow recommended torque specifications, can result in

>  equipment malfunction and/or injury to operator or bystanders.

* * *

**<u>Operating Safety</u>**   **To help prevent serious injury or death, always follow these safety precautions:**

>  ! *Loading*    BEFORE LOADING, make sure

>  ! Load can be properly distributed and will not exceed trailer capacity.

>  ! Ramp surface is clean and dry (not slippery).

* * *

**<u>Service Safety</u>**   **To help prevent serious injury or death, always follow these safety precautions:**

>  ! *Maintenance/Service*

>  ! Use genuine factory replacement parts or parts with equivalent characteristics, including type, strength and material. Failure to do so may result in product malfunction and possible injury to the operator and/or others.

>  ! If you substitute equivalent products for brand-name products or tools mentioned in this manual, they must match the brand-name products in all relevant characteristics, such as strength, durability, and type or material. It is your responsibility to determine if the substitution could result in product malfunction and possible injury to the operator and/or others.

In Mississippi, a warning may be held adequate as a matter of law where the adverse effect was one that the manufacturer specifically warned against. *Austin v. Will-Burt Co.*, 361 F.3d 862, 878 (5th Cir. 2004)(*citing Cather v. Catheter Tech. Corp.*, 753 F.Supp. 634, 640 (S.D.Miss.1991)).  Trail King warned the plaintiff that to help "prevent serious injury or death" do not modify the trailer or load equipment on wet ramps.  Trail King also clearly warned the plaintiff to use only "genuine factory

replacement parts or parts with equivalent characteristics, including type, strength and material.  Failure to do so may result in product malfunction and possible injury to the operator and/or others."

The undisputed evidence shows that Trail King specifically warned the plaintiff of the very danger of injury he now complains of.  The plaintiff has offered no proof to refute the evidence presented that he was specifically warned that the actions he took could be detrimental to his personal safety.  The plaintiff modified the trailer and used replacement parts other than genuine Trail King parts in direct contravention of the warnings clearly posted in the owner's manual which came withe the TK20 trailer and which the plaintiff admits that he read.  The plaintiff's failure to follow the actual warnings provided and his failure to offer proof that the warnings were inadequate at the time the trailer left the manufacturer is fatal to this claim.

## **DESIGN DEFECT**

For a claim of design defect, the MPLA provides:

> (b)  A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

and,

> (f)  In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)3 of this section, the manufacturer or product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>
>   (i) The manufacturer or seller knew, or in light of reasonably available

>knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and

>>(ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

Miss. Code Ann. § 11-1-63(b), (f)(i), (ii).

In order for a plaintiff to prove a product is unreasonably dangerous due to a design defect, one of the main elements he must offer proof of, and ultimately prove, is that the product "failed to function as expected" at the time it left the control of the manufacturer. *See Austin v. Will-Burt Co.*, 361 F.3d at 872.

The plaintiff has not even attempted to offer proof of whether or not the trailer functioned as expected when it left the manufacturer, but instead argues that it failed to function as expected on the date of the accident, some four years after its purchase and entry into service. It is undisputed that the TK20 trailer that left Trail King's manufacturing plant in Brookville, Pennsylvania in July, 1999 was not in the same condition, nor equipped with the same fundamental parts on the date of the incident, May 13, 2003. As the plaintiff testified, he replaced the ramp pins "five or six times", before the incident and it is undisputed that the represented accident pin that broke on May 13, 2003 was not a genuine Trail King ramp pin. Further, the originally represented accident pin fragments did not meet any of the specifications required by Trail King, including strength, durability or chemical composition.

It is further undisputed that the plaintiff, and/or his authorized agents, performed numerous alterations and modifications of, and welded steel plates to the left hinge

assembly that attached the left ramp to the trailer, without consulting Trail King and without the assistance of an engineer.  It is further undisputed that these welds, replacements and modifications to the left ramp pin and hinge assembly were completed as much as two years before the May 13, 2003 incident, while the trailer was under warranty.

The plaintiff has wholly failed to show that he TK20 trailer failed to function as expected on the date it left the manufacturer.  Failure to offer proof that the TK20 trailer failed to function as expected when it left the manufacturer is fatal to the plaintiff's design defect claim.

## **PROXIMATE CAUSE**

In addition to the foregoing, it is incumbent upon the plaintiff to offer proof that the alleged inadequate warnings and/or the alleged design defect was the proximate cause or proximate contributing cause of his injuries.  The plaintiff's expert liability witness, Jamie Lee Petty-Galis, has specifically testified that she does not know what caused the accident, only that the left ramp pin broke and in her opinion the trailer was defectively designed.  The plaintiff was knocked unconscious from the roll-over and has been unable to provide any information about the accident relative to the actual roll-over.  The defendant has provided the affidavits of David Mozingo and Roger Buse, both members of the Sunrise Fire Department and the initial first responders on the scene.  Buse actually cut the plaintiff's safety belt to remove him from the dozer.

Both Mozingo and Buse have stated that the dozer appeared to have cleared the loading ramps a substantial distance when it rolled off the trailer and that the left ramp

was still attached to the trailer in a slightly lowered position.  Additionally, still captures from video news footage taken at the scene on the date of the accident seem to indicate to the untrained eye that the dozer was indeed well forward of the ramps when it rolled over.  Further, defendant's expert, Aaron Jones, has provided a photo-grammetric analysis concluding that the dozer had cleared the ramps by some five feet when it rolled over.  This appears consistent with the photos provided.

After the plaintiff was transported from the scene, the trailer was moved to level ground and a wrecker winched the dozer up the still-attached ramps for removal from the accident site.  Clearly, the physical evidence does not support the plaintiff's theory that the breaking of the left ramp pin caused or contributed to the accident, let alone that the design of the TK20 trailer or the alleged lack of adequate warnings in any way contributed to this unfortunate incident.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendant's Motion for Summary Judgment **[#94]** is Granted and the plaintiff's Complaint is dismissed with prejudice and that all other pending motions are dismissed as moot.

A separate judgment shall be entered herein in accordance with rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 20th day of November, 2006.


s/ *Keith Starrett*
UNITED STATES DISTRICT JUDGE